IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROOSEVELT RHYM, : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| : | |
| v. : | |
| : | NO.  05-3750 |
| SOUTHEASTERN PENNSYLVANIA : | |
| TRANSPORTATION AUTHORITY, : | |
| Defendant. : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                July 19, 2006

    Presently before the Court are Plaintiff's Motion to Withdraw Complaint Without Prejudice (Docket No. 6), Defendant's Motion for Summary Judgment (Docket No. 7), Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Complaint (Docket No. 8), Plaintiff's Reply (Docket No. 9), Defendant's Surreply (Docket No. 10), Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 11), and Defendant's Reply in Support of its Motion for Summary Judgment (Docket No. 12).  For the reasons stated below, Plaintiff's Motion to Withdraw Complaint Without Prejudice is denied and Defendant's Motion for Summary Judgment is granted.

**I.  FACTS AND PROCEDURAL HISTORY**

    Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") hired Plaintiff as a tower operator in 1988.  Approximately twelve years later, in 2000, Plaintiff applied for and was granted leave under the Family and Medical Leave Act ("FMLA") by Defendant for pericariditis and related symptoms.

In November 2002, Plaintiff began a training program to become a train dispatcher. In an affidavit, Ms. Malissa Osbourne, Chief Instructor for Defendant, stated that on the first day of train dispatcher training, she advised Plaintiff that he would be dropped from the training program if he accumulated more than three "turn-ins," or absences, other than FMLA qualifying absences and vacation or personal days. (Def.'s Mot. Summ. J. Ex. 1 ¶ 10.) Plaintiff claims that there was no mention of attendance requirements prior to the start of the training program.[1]

It is undisputed that Plaintiff missed training on July 13, 2002 and July 20-21, 2003, and that after these absences, Plaintiff had a total of six "turn-ins." On July 28, 2003, Ms. Osbourne met with Plaintiff and informed him that he was being dropped from the training program because of substandard attendance. Plaintiff told Ms. Osbourne that his absences were due to the same heart condition that warranted FMLA leave in 2000. Ms. Osbourne claims that before this meeting, she "was unaware of any medical condition that Plaintiff had that might explain his numerous absences . . . ." (Def.'s Mot. Summ. J. Ex. 1 ¶ 10.) Ms. Osbourne advised Plaintiff that he could rejoin the training program if Defendant's medical department approved his absences as FMLA leave.

Plaintiff then presented Ms. Osbourne with a request for FMLA leave. Ms. Osbourne told Plaintiff that his request for FMLA leave should not be directed to her, but instead to Defendant's medical department. Later, Ms. Osbourne spoke with a physician in Defendant's

---

1. Plaintiff does not make this claim in an affidavit. Plaintiff's contention is raised in the memorandum accompanying Plaintiff's Response to Defendant's Motion for Summary Judgment and in Plaintiff's Response Exhibit B, which is a letter from Plaintiff to Defendant.

medical department who informed her that Plaintiff's request for FMLA leave was denied. According to Ms. Osbourne, Plaintiff never presented her with an approved FMLA certification.

Plaintiff's FMLA certification states that Plaintiff suffered from "allergic bronchitis" from May 5, 2003 until July 21, 2003. The certification lists the healthcare provider as Joseph S. Kenney. (Def.'s Mot. Summ. J. Ex. 2-A.) In a January 2006 deposition, Dr. Kenney stated that: (1) he treated Plaintiff for pericarditis, but Plaintiff's pericarditis was completely resolved by January 17, 2000; (2) he did not treat Plaintiff at all during the time of Plaintiff's alleged allergic bronchitis; (3) he never treated Plaintiff for allergic bronchitis; (4) he did not sign the FMLA certification in question and that it is his practice to sign FMLA certifications; and, (5) he never uses white-out on medical forms, even though the FMLA certification at issue in this case appears to be altered with white-out. (Def.'s Mot. Summ. J. Ex. 4.)

Following Dr. Kenney's deposition, Plaintiff demanded to settle the case for $15,000. Defendant rejected Plaintiff's offer to settle. Shortly thereafter, Plaintiff forwarded a Stipulation to Dismiss Complaint, Without Prejudice to Defendant. Defendant refused to execute the Stipulation. Plaintiff then offered to dismiss the complaint with prejudice, provided the parties would bear their own costs. Defendant refused this offer as well. Plaintiff then filed a Motion to Withdraw Complaint, Without Prejudice pursuant to Federal Rule of Civil Procedure 41 and Defendant filed a Motion for Summary Judgment in accordance with the Court's October 25, 2005 Scheduling Order. (Docket No. 5.) Both motions are presently before the Court.

**II.  PLAINTIFF'S MOTION TO WITHDRAW COMPLAINT WITHOUT PREJUDICE**

Plaintiff has moved to dismiss this case without prejudice.  Federal Rule of Civil Procedure 41(a)(2) provides that "[a]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."  The question of whether dismissal under Rule 41(a)(2) is with or without prejudice is within the discretion of the Court.  Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (2006) ("if the plaintiff . . . moves for dismissal without prejudice . . . the matter is left to the discretion of the court").

Courts generally consider four factors when considering whether to dismiss an action with or without prejudice: (1) whether a motion for summary judgment has been filed; (2) the extent of a defendant's efforts and expenses in preparing for trial; (3) the excessive expenses in defending a second action; and (4) insufficient explanation for dismissal by the plaintiff.  Id. (citing Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc., No. 97-7430, 1999 WL 675469, at *5 (E.D. Pa. Aug. 31, 1999)).

In the present case, the Court finds that a dismissal without prejudice is inappropriate.  First, Defendant has filed a motion for summary judgment in accordance with the Court's scheduling order.  Second, Plaintiff has not offered a sufficient explanation for dismissal without prejudice.  Plaintiff only argues that: (1) he learned during discovery that it would be difficult to recover based on the facts of this case, and (2) he attempted to end the litigation by contacting Defendant and offering to withdraw his complaint with prejudice provided that each party paid their own costs.  Plaintiff claims that "Defendant could have ended the litigation, with or without prejudice, but chose to continue to incur costs and fees by filing a motion for summary

4

judgment and a response to Plaintiff's Motion to Withdraw." (Pl.'s Reply at 7.) However, the Court points out that Defendant filed its motion for summary judgment in accordance with the Court's previously issued scheduling order, as discussed above, and that Defendant was not obligated to accept Plaintiff's offer to end the litigation.[2]

The presence of these factors, coupled with Defendant's efforts and expenses incurred thus far and the potential expenses of defending a second action, do not weigh in favor of a dismissal without prejudice. Therefore, the Court denies Plaintiff's Motion to Withdraw Complaint Without Prejudice. In light of Defendant's Motion for Summary Judgment, the Court continues by deciding this case on the merits.[3]

**III. SUMMARY JUDGMENT**

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v.

---

2. The Court notes that Defendant has requested that the Court use its inherent authority to award costs and attorneys' fees. The Court does not find that the facts of this case warrant such an award.

3. Defendant argues that Plaintiff's claims are barred by a May 12, 2005 release signed by Plaintiff. The Court assumes without deciding that the release does not preclude Plaintiff's claims and grants summary judgment on the merits of each claim.

5

Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

## IV. DISCUSSION

Plaintiff's Complaint states claims for: (1) entitlement to leave under the FMLA; (2) retaliation under the FMLA; and, (3) breach of contract under Defendant's employee handbook.[4]

### A. FMLA Claims

Plaintiff's Complaint asserts two claims under the FMLA.  First, Plaintiff claims that he was entitled to, but did not receive, FMLA leave.  Second, Plaintiff claims that "Defendant has retaliated against Plaintiff by demoting him to a lower paying job position with lesser benefits in relation to Plaintiff's leave under the FMLA." (Pl.'s Compl. ¶ 38.)

#### 1. Plaintiff was not entitled to FMLA leave

Under the FMLA, eligible employees are entitled to leave, *inter alia*, "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  For purposes of the FMLA, a serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  § 2611(11).

---

4. Plaintiff's Complaint also states claims for violation of the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA").  In Plaintiff's Reply to Defendant's Motion for Summary Judgment, Plaintiff dropped his ADA and PHRA claims.

In the present case, Plaintiff has not demonstrated that he has a serious health condition as defined by the FMLA. Plaintiff has presented no evidence that he was treated in a hospital, hospice, or residential medical facility during the relevant time period. Plaintiff has also presented no evidence that he received continuing treatment by a health care provider during the relevant time period. In fact, the provider listed on Plaintiff's FMLA certification, Dr. Kenney, stated in a deposition that he did not treat Plaintiff *at all* during the time of Plaintiff's alleged allergic bronchitis. (Def.'s Mot. Summ. J. Ex. 4 at 31-33.)  Therefore, the Court finds that there is no genuine issue of material fact as to whether Plaintiff was suffering from a serious health condition, and therefore concludes that summary judgment in favor of Defendant is appropriate on this claim.[5]

### 2. Defendant did not retaliate against Plaintiff

Even though the Court has concluded that Plaintiff was not entitled to FMLA leave, the Court will discuss Plaintiff's retaliation claim. The FMLA also prohibits retaliation by an employer for the employee's exercise of rights under the FMLA. 29 U.S.C. § 2615(a)(2). As with other retaliation claims, the Court utilizes the burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas when analyzing a such a claim under the FMLA. See Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 451 (E.D. Pa. 2002). To establish a prima facie case of retaliation under the FMLA, Plaintiff must demonstrate that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and, (3) a causal connection exists between the adverse action and Plaintiff's exercise of his FMLA

---

5. Plaintiff argues that "Defendant Septa [sic] is estopped from claiming that [he] did not suffer a serious illness due to the fact that Septa [sic] allowed him FMLA leave for [pericarditis] before and after the July 28, 2003 dismissal from the dispatcher program." (Pl.'s Rely 6.) Plaintiff cites no authority for this argument.

rights. Panto v. Palmer Dialysis Center/Total Renal Care, No. 01-6013, 2003 WL 1818990, at *7 (E.D. Pa. April 7, 2003) (citing Alifano v. Merck & Co., 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001)).

In the present case, Defendant concedes that Plaintiff can demonstrate the second element of retaliation: Plaintiff suffered an adverse employment action when he was dropped from the train dispatcher training program. However, with regard to the first element of retaliation, Defendant argues that the submission of a fraudulent FMLA certification is not a statutorily protected activity. Plaintiff fails to allege any protected conduct. After analyzing the facts of this case, the Court concludes that Plaintiff has not engaged in a protected activity and therefore finds that summary judgment in favor of Defendant is appropriate on this claim.

### B. Handbook Claim

Plaintiff argues that Defendant violated the terms of its employee handbook. First, Plaintiff claims that the policy in effect at the time that he commenced training provided for a course of progressive discipline. Plaintiff claims that he did not receive the progressive discipline that he was entitled to prior to being dropped from the training program. In support of this argument, Plaintiff has attached a copy of Defendant's "SAM Sick Pay & Sick Leave Policy." (Pl.'s Response to Def.'s Mot. Summ. J. Ex. G.)

Second, Plaintiff argues that Defendant altered the effective date of the Train Dispatcher Training Program Guidelines ("Guidelines"), which sets forth the three "turn-in" policy. The copy of the Guidelines attached by Plaintiff indicates that it was "created on" November 12, 2002. (Def.'s Mot. Summ. J. Ex. 1-A.) Plaintiff claims that "[i]f the [leave] policy did change, which Plaintiff does not concede, than [sic] it changed on July 2, 2003 – after

[Plaintiff] had completed all training and passed all examinations (June 2003) and was awaiting his appointment to full time position, scheduled to occur in August 2003." (Pl.'s Response to Def.'s Mot. Summ. J. 6-7.) In support of this contention Plaintiff attaches a copy of the Guidelines dated July 2, 2003. Id. Ex. F.

Defendant responds that it has a separate rail training department which establishes criteria for the completion of its training programs. In an affidavit, the Manager of Rail Training, Mr. Terry Spratt, stated that the rail training program has a separate set of attendance requirements than the attendance requirements of SEPTA "A" payroll "SAM" employees. (Def.'s Reply in Support of Mot. Summ. J. Ex. 2 ¶ 4.) Mr. Spratt further stated that "with regard to Train Dispatcher training, [Defendant] instituted a policy in November 2002 that provides that no trainee can have more than three absences ("turn-ins") during any phase of the training program which consists of 3 [three] phases." Id. ¶ 5. In addition to Mr. Spratt's affidavit, Defendant attached the affidavit of Ms. Malissa Osbourne, Chief Instructor for Defendant. Ms. Osbourne stated that she advised Plaintiff of the three "turn-in" policy when he commenced training. (Def.'s Mot. Summ. J. Ex. 1 ¶ 10.)

The Court finds that no reasonable jury could find that: (1) the SAM Sick Pay & Leave policy applied to participants in the rail training program or (2) Defendant altered the effective date of the Guidelines. In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986), the United States Supreme Court stated that:

> If the defendant in a run-of-the-mill civil case moves for summary judgment . . . on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence

>of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

In the present case, Plaintiff has not attached an affidavit recounting his own version of the facts in this case. Such an affidavit could have stated that he was told that the SAM Sick Pay & Leave policy applied to the training program, that he relied on the SAM Sick Pay & Leave policy when he did not come to work, that he did not receive a copy of the Guidelines, or that he was told that the SAM Sick Pay & Leave policy applied to the training program. The only evidence that Plaintiff presented is a copy of the SAM Sick Pay & Leave policy and a copy of the Guidelines dated July 2, 2003. The Court finds that there is an absence of evidence on which a jury could reasonably find for Plaintiff and therefore finds that summary judgment in favor of Defendant is appropriate on this claim.

## V.  CONCLUSION

For the reasons stated above, Plaintiff's Motion to Withdraw Complaint Without Prejudice is denied and Defendant's Motion for Summary Judgment is granted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROOSEVELT RHYM, : | |
|         Plaintiff, : | |
| : | CIVIL ACTION |
| : | |
| v. : | |
| : | NO. 05-3750 |
| SOUTHEASTERN PENNSYLVANIA : | |
| TRANSPORTATION AUTHORITY, : | |
|         Defendant. : | |

## ORDER

AND NOW, this 19th day of July, 2005, upon consideration of Plaintiff's Motion to Withdraw Complaint Without Prejudice (Docket No. 6), Defendant's Motion for Summary Judgment (Docket No. 7), Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Complaint (Docket No. 8), Plaintiff's Reply (Docket No. 9), Defendant's Surreply (Docket No. 10), Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 11), and Defendant's Reply in Support of its Motion for Summary Judgment (Docket No. 12), it is hereby **ORDERED** that Plaintiff's Motion to Withdraw Complaint Without Prejudice is **DENIED.** It is further **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

This case is **CLOSED.**

BY THE COURT:

_____
RONALD L. BUCKWALTER, S.J.